UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO D., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 24 CV 2677 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antonio D. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse the Commissioner's decision [15] is granted, the Commissioner's motion for summary judgment [19] is denied, and the case is remanded for further administrative proceedings.[1]

**Background**

In September 2021, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of July 9, 2021. [12-1] 19. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 19, 40. The Appeals Council denied review in February 2024, [*Id.*] 1–6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [12-1] 22. At step two, the ALJ determined that plaintiff has the following severe impairments: "depression disorder and anxiety disorder[.]" [*Id.*] 22–25. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 26–29. Before turning to step four, the ALJ ruled that

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record, [12-1]; [12-2], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [8].

plaintiff had the residual functional capacity (RFC) to perform light work except that (1) he is only capable of understanding, remembering, and carrying out instructions for simple tasks requiring routine judgment with directions that should be clearly stated; (2) he should not be assigned tasks with hourly production quotas and/or assembly line work; and (3) he could not climb ladders, ropes or scaffolding, should avoid all exposure to unprotected heights, and cannot drive as a job duty. [*Id.*] 29–38. At step four, the ALJ held that plaintiff could not perform his past relevant work. [*Id.*] 38. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: cleaner (200,000 jobs), cafeteria attendant (16,000 jobs), and office helper (10,000 jobs). [*Id.*] 39–40. Accordingly, the ALJ ruled that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) did not properly evaluate the opinion of plaintiff's treating psychologist (Dr. Konopka) when finding it unpersuasive, and (2) improperly weighed plaintiff's activities of daily living while evaluating his symptoms. [15] 7–15. The Court agrees that the ALJ's decision regarding the persuasiveness of Dr. Konopka's medical opinion is not supported by substantial evidence and a remand for further proceedings is required.

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and

2

consistency are the two most important factors and an ALJ must explain how she considered those factors, but she is not required to articulate how she evaluated the other factors. *Id.* "In considering the supportability and consistency of a medical opinion, an ALJ need only minimally articulate her reasoning for the persuasiveness of the medical opinion." *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024) (citation modified).

Dr. Konopka began seeing plaintiff on 10/05/2021. [12-2] 933. On 07/11/2022, Dr. Konopka completed a "Mental Capacity Questionnaire" in which he opined that the plaintiff was: (1) not "mentally able to perform simple, repetitive tasks[;]" (2) did not "retain[] the capacity to perform any type of work for 8 hours per day, 40 hours per week for 50 weeks per year[;]" and (3) was "expected to remain at least at this level of severity for at least the next 12 months or 12 months since work cessation[.]" [*Id.*] 649. When asked to describe the objective and clinical findings that supported his opinion, Dr. Konopka wrote:

> Patient was evaluated with objective neuropsychological and electrophysiological measures. The data showed difficulties in the domains of sustained and complex attention, impulsivity, cognitive flexibility, executive functioning, and verbal domains as evidenced by poor performance on tasks including semantic fluency, digit span, coding, and overall performance on Repeatable Battery for the Assessment of Neuropsychological Functioning which was below 10th%. The electrophysiological data supported the cognitive, emotional, and behavioral observations and current clinical presentation. Presence of generally distributed theta was observed. In addition, significantly dysregulated right temporal lobe and limbic system activities were present.
>
> Furthermore, patient experiences transient dissociative states. He has tendencies perseverate, become stuck on obsessive negative thoughts, and is easily emotionally triggered. He exhibits frequent mood changes without being aware of his changing cognitive and emotional states.
>
> Patient is currently not driving due to seizure disorder which is medically managed. Patient has an abnormal MRI finding of *'gray-white junction of the right temporal lobe corresponding to a dystrophic calcification seen on the previous head CT. This was felt to reflect possible prior infection such as cysticercosis or trauma.'*
>
> Based on the above data and the clinical history of temporal lobe seizures, the patient's current cognitive/emotional status would not support fulltime employment.

[*Id.*] 649–50.

The ALJ admits that Dr. Konopka "references objective evidence a[s] a basis for h[is] opinion." [12-1] 37. However, the ALJ was "not persuaded with this opinion" for three reasons: (1) it was "based on the claimant's clinical history of temporal lobe seizures . . . [;]" (2) it "fails to consider the claimant's improvement in his symptoms . . . [;]" and (3) "is inconsistent with the treatment record." [*Id.*] 37–38.

A. Supportability

When determining the supportability of a medical opinion, an ALJ is instructed to look to "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.*

The ALJ never used the word "supportability" in her decision, however the Court may infer that she considered this required factor if it is apparent in her analysis. *See Wachholz v. Kijakazi*, No. 20-CV-1412, 2022 WL 787932, at *5 (E.D. Wis. Mar. 15, 2022). The Commissioner argues that the ALJ properly addressed the supportability factor by discussing "the improvement in cognitive rehabilitation, problem-solving skills, and memory documented in Dr. Konopka's treatment notes[;] . . . [and] when discussing Dr. Konopka's treatment notes that were inconsistent with his opinion." [19] 5. While these parts of her decision might show that the ALJ considered supportability, the Court does not find that this discussion shows that the ALJ's decision was supported by substantial evidence. Several of the notes discussed by the ALJ do not appear to contradict any part of Dr. Konopka's opinion. Further, the ALJ frequently fails to identify the portions of these same notes that directly support Dr. Konopka's opinion. "Although the ALJ need not discuss every piece of evidence in the record, [s]he must confront the evidence that does not support h[er] conclusion and explain why it was rejected." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation modified).

The ALJ first cites a treatment note from Dr. Konopka for the proposition that plaintiff has "reported that he is doing well, . . . life has been stable with no major stressors[,] . . . [and] he continues to make progress with cognitive rehabilitation." [12-1] 38. While the ALJ's discussion accurately summarized how the plaintiff reported he was feeling, it ignored the portion of the note which recorded that plaintiff was working to "reconcil[e] his attitudes towards" no longer being able to work due to "the reality of his illness." [12-2] 1166. Further, at the end of the note, Dr. Konopka writes that plaintiff is "experiencing significant . . . difficulties managing his everyday life due to side effects of medications . . . [and is] experiencing difficulties in retaining information, and staying focused on tasks." [*Id.*] 1168.

4

The ALJ next identified a note that stated: "the claimant reported that he feels that he has increased abilities to solve problems and that his memory appears to have improved." [12-1] 38. But the ALJ does not discuss the very next sentence in the note, which states "[p]atient also has a tendency to repeat himself." [12-2] 953. Nor does the ALJ discuss Dr. Konopka's record at the end of the note which states "[plaintiff's] memory is somewhat impaired, patient had difficulties repeating the content of the conversation." [*Id.*] 955.

Finally, the ALJ, citing four treatment notes, states that plaintiff "organizes large birthday parties and goes on family trips." [12-1] 38. The Seventh Circuit has cautioned against excessive reliance on a person's daily activities when determining his or her ability to engage in full-time employment. *See, Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). This is because daily non-work related activities provide flexibility in scheduling and can often include assistance from a family member. *Id.* And even if plaintiff's daily activities were appropriate to consider when assessing the supportability of Dr. Konopka's opinion, the ALJ's discussion of these notes does not provide substantial evidence for the proposition that his opinion was unsupported.

The notes cited by the ALJ only reference one party where the plaintiff had any responsibility, and it simply reported that the "[p]atient and his wife were in charge of providing accommodations, including food[.]" [12-2] 707. Importantly, that same note included statements which directly supported the portion of Dr. Konopka's opinion that concluded plaintiff is unable to work because "[h]e exhibits frequent mood changes without being aware of his changing cognitive and emotional states." [*Id.*] 650. After writing about plaintiff's participation in those parties, Dr. Konopka documents:

> Patient feels that he is pretty much done with having large parties for a while.
> . . .
> Patient spoke about having some emotional dysregulation that is perceived by others but not necessarily by him. When asked how he knows that this occurs patient indicated that family members generally make comments about his mood change. Patient feels that he generally does not perceive these occurrences.

[*Id.*] 707. Despite this note containing information which directly supports Dr. Konopka's opinion, the ALJ selectively cites only part of the note and uses it as a strained example for why Dr. Konopka's opinion is unpersuasive. "Although a written evaluation of each piece of evidence or testimony is not required, . . . neither may the ALJ select and discuss only that evidence that favors h[er] ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (citation modified); *see also*, *Seruya v. Berryhill*, No. 16 C 10896, 2017 WL 4650886, at *4 (N.D. Ill. Oct. 17, 2017)

5

(ALJ cannot "cherry-pick[] . . . [by] citing only to treatment notes which reflected improvement or stability.").

The Commissioner also argues that, when evaluating if the ALJ properly considered supportability, this Court can consider the portions of Dr. Konopka's treatment record discussed by the ALJ in other sections of her decision. [19] 4; (citing *Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020)). However, the ALJ's discussion of those records is similarly insufficient to demonstrate that there is substantial evidence for her decision regarding the persuasiveness of Dr. Konopka's opinion.

In December of 2021, Dr. Konopka did record that plaintiff's memory was intact and that his attention and concentration were within normal limits. [12-1] 23, 501. But in that same report, Dr. Konopka explained that plaintiff's electrophysiological and neurobehavioral profile support diagnoses of "Cognitive difficulties[;] Attention difficulties; Anxiety; [and] Sleep difficulties." [*Id.*] 508. Additionally, a few normal findings within a treatment record do not automatically override all the other notes with abnormal findings. *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days[.]") The ALJ also discussed how "Dr. Konopka frequently noted somewhat limited attention and concentration and slow, deliberate speech, but plaintiff consistently was able to get his point across and exhibited logical, coherent, goal-oriented thought processes, stable mood, normal thought content, pleasant, cooperative attitude, and no psychomotor agitation." [19] 4; [12-1] 24. However, the ALJ does not articulate how these findings are inconsistent with the reasons given in Dr. Konopka's opinion that plaintiff is unable to work. *Sherise K. v. Dudek*, No. 24 C 11199, 2025 WL 1260831, at *2 (N.D. Ill. Apr. 30, 2025) ("The court has to be able to trace the path of the ALJ's reasoning.")

For these reasons, the Court finds that the ALJ erred in her consideration of the supportability of Dr. Konopka's opinion.

B. Consistency with the record

"[F]or an opinion to be consistent, it must be, reductively, consistent with the record." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *2 (N.D. Ill. Mar. 29, 2024). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In support of the assertion that Dr. Konopka's opinion was inconsistent with the treatment record, the Commissioner cites the ALJ's discussion of treatment notes

6

from doctors other than Dr. Konopka. [19] 6–7. However, the Court finds that the ALJ's discussion of these notes suffers from the same flaws as her discussion of Dr. Konopka's notes. First, many of these notes cited do not actually refute the reasons supplied in Dr. Konopka's opinion for why the plaintiff is unable to work. Second, the ALJ's discussion of these notes often fails to discuss the information contained in them that supports Dr. Konopka's findings.

To support the ALJ's conclusion that Dr. Konopka's opinion is inconsistent with the treatment record, the Commissioner first identifies the portion of the ALJ's decision which describes plaintiff's seizure activity as "under control[.]" [19] 3. The ALJ does cite treatment records to support her statement that plaintiff's "seizure activity is under control[,]" and he "has had no seizure activity in almost a year."[3] [12-1] 38. However, both this statement and its citation fail to provide substantial evidence for the proposition that Dr. Konopka's opinion is inconsistent with the treatment record.

While Dr. Konopka did mention plaintiff's history of temporal lobe seizures in his opinion, it does not appear to the Court that the opinion was entirely or substantially based on that history. [12-2] 649–50. Dr. Konopka discusses a number of tests performed and other objective evidence to support his conclusion and only mentions the plaintiff's history of seizures at the end. [*Id.*]. Regardless, even if Dr. Konopka did rely significantly on plaintiff's history of temporal lobe seizures in forming his opinion, the ALJ did not discuss the ample evidence in the record that plaintiff's seizures are not in fact "under control." It is true that a 02/2/2023 treatment note reported "no seizure activity, [] since last summer" [*Id.*] 1210. However, plaintiff testified at the hearing that, while he last lost consciousness around May 2022, [12-1] 56, he was still experiencing seizures that do not result in a loss of consciousness, [*Id.*] 53. In fact, according to the plaintiff, his last seizure occurred the week before the hearing. [*Id*]. Plaintiff's testimony is supported by a treatment record from 03/14/2023 which stated "MARCH 2023 Focal seizures from (L) temporal structures 2x/week." [12-2] 1092. Dr. Konopka's opinion made no reference to loss of consciousness, just temporal lobe seizures. [*Id.*] 649–50. While the plaintiff's seizure activity that results in loss of consciousness may be under control, the ALJ failed to discuss the evidence in the record which shows that the type of seizures referenced by Dr. Konopka, temporal lobe seizures, are still occurring.

Other than notes regarding plaintiff's seizure activity, the ALJ cites several notes which allegedly show that plaintiff's limitations are not as severe as Dr. Konopka's opinion makes out. One note recorded testing finding that plaintiff's higher cognitive functioning regarding spelling, math, proverb interpretation, and

---

[3] In this section the ALJ also discusses claimant's MRI and EEG findings from 2020. [12-1] 38. It is unclear how MRI and EEG findings from 7 months before claimant's alleged onset date and 19 months before Dr. Konopka's opinion are relevant.

7

judgment are intact.[4] [12-1] 38. But Dr. Konopka's opinion did not cite spelling, math, proverb interpretation, or judgment as reasons plaintiff could not work. [12-2] 649–50. Another note the ALJ cites is from 05/04/2023 for the propositions that: (1) plaintiff's "medications have helped reduce his symptoms;" (2) plaintiff "performs crossword puzzles and exercises and . . . engages in Lumosity exercises[;]" and (3) "[m]ental status examination test findings showed that the claimant had attention and concentration within normal limits..."[5] [12-1] 38. However, that treatment note, which was the result of a 20 minute virtual appointment, actually stated that (1) "[m]eds were adjusted so hopes déjà vu moments decrease even more[;]" (2) plaintiff is "stuck with some of the cognitive exercises in Lumosity[,] [r]eviewed different cognitive exercises[,] [c]rosswords, puzzles, physical exercises[;]" and (3) attention and concentration "appear[] within normal limits[.]" [12-2] 1125–26. The Court reads this treatment note as evidence that plaintiff is still struggling with his symptoms rather than demonstrating improvement so drastic as to make Dr. Konopka's opinion inconsistent with the treatment record.

For these reasons, the Court finds that the ALJ erred in her consideration of Dr. Konopka's opinion's consistency with the treatment record.

\* \* \*

In summary, the Court finds that the ALJ's decision regarding the persuasiveness of Dr. Konopka's opinion is not supported by substantial evidence. Having found that the ALJ's insufficient analysis of Dr. Konopka's opinion constitutes a reversible error requiring remand, the Court need not address plaintiff's remaining contentions as to how the ALJ erred.

---

[4] The ALJ incorrectly described this finding as "testing showed that the claimant has a high cognitive functioning in spelling, math, proverb interpretation, and intact judgment." [12-1] 37. That is not what the treatment note said, rather it said that "[h]igher cognitive function of spelling, math, proverb interpretation and judgement is intact." [12-2] 1094.

[5] The ALJ also identified that these notes recorded that plaintiff "had a normal speech rate, rhythm, volume, and tone[] . . . [and] displayed average cognition and intelligence with no focal deficits[.]" [12-1] 38. As these observations are not related to anything in Dr. Konopka's opinion, the Court will not address them.

8

**Conclusion**

Plaintiff's motion to reverse and remand [15] is granted and defendant's motion for summary judgment [19] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 13, 2026**